# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMIE JIMMERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:14-CV-342 |
| | ) | |
| DR. MEYERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Jamie Jimmerson, a *pro se* prisoner, is proceeding on claims against Dr. Joseph Thompson, Dawn Nelson,[1] and Dr. Michael Mitcheff ("the defendants"). (DE 4.) The defendants move for summary judgment on the ground that Jimmerson did not properly exhaust his administrative remedies before filing suit. (DE 8.) For the reasons set forth below, the plaintiff is **GRANTED** to and including **September 5, 2014**, to submit a sworn declaration or affidavit as outlined herein. The defendants are granted to and including **September 19, 2014**, to file a response to the plaintiff's submission. The motion for summary judgment (DE 8) is **TAKEN UNDER ADVISEMENT** pending further ruling.

---

[1] Nelson was incorrectly named as "Don" Nelson in the complaint. (DE 1.)

BACKGROUND

Jimmerson, an inmate within the Indiana Department of Correction ("IDOC"), brought this action on February 12, 2014, pursuant to 42 U.S.C. § 1983. (DE 1 at 9.) The court screened the complaint pursuant to 28 U.S.C. § 1915A, and granted him leave to proceed on a claim that Dr. Thompson and Nelson, a health care administrator, provided him improper medical treatment for throat and neck cancer while he was at Indiana State Prison ("ISP"). (DE 4.) He was also granted leave to proceed on a claim that Nelson improperly retaliated against him in violation of the First Amendment for complaining about his medical care. (*Id.*) Jimmerson is no longer housed at ISP, and is presently housed at Westville Correctional Facility ("Westville"). (DE 1 at 1.) He alleges that he is still receiving inadequate medical care, particularly with respect to his pain medication. He was granted leave to proceed on a claim for injunctive relief against Dr. Mitcheff, the regional medical director for Corizon Medical Services ("Corizon"), a private company which provides medical care at IDOC facilities, pertaining to his current need for additional pain medication. (*Id.*)

At all relevant times, and pursuant to IDOC policy, both ISP and Westville had a grievance process under which an inmate can grieve a broad range of issues. (DE 9-1, Bean Aff. ¶ 2-5.) The process begins with the inmate attempting to resolve the matter

informally with staff. (*Id.* ¶ 6.) If the issue cannot be resolved informally, the inmate must file a formal grievance within 10 days of the underlying incident. (*Id.* ¶¶ 7-8.) If the grievance is not resolved to the inmate's satisfaction, he must file an appeal within 10 working days of the grievance response. (*Id.* ¶ 8.)

An official record is kept of all inmate grievances, and those records reflect that Jimmerson has filed various grievances during his incarceration. (*Id.* ¶¶ 11-13.) As is relevant here, in February 2013, while he was at ISP, he filed a grievance about the medical care he was receiving for throat and neck cancer. (DE 9-1 at 6; DE 16 at 3.) Prison staff responded that he had been seen and treated. (DE 9-1 at 6.) There is no record that he filed an appeal of this grievance. (DE 9-1, Bean Aff. ¶ 13.)

In December 2013, after he was transferred to Westville, he filed a grievance complaining that his pain medication was not working. (DE 9-1 at 9.) Prison staff responded that the prescription recommended by an outside doctor had been provided. (*Id.*) There is no record that he filed an appeal of this grievance. (DE 9-1, Bean Aff. ¶ 13.) Also in December 2013, he filed a grievance complaining that he was not receiving a special medical diet that had been recommended by an outside provider. (DE 9-1 at 7.) The medical staff responded that there was no record anyone had ordered a special diet for him, or that such a diet was warranted. (*Id.*) There is no record that he filed an appeal. (DE 9-1, Bean

3

Aff. ¶ 13.) In March 2014, after this action was filed, Jimmerson filed a grievance complaining that he had not received a copy of his medical clemency petition. (DE 9-1 at 8.) He was told that his petition was being processed at IDOC's central office. (*Id.*) There is no record that he filed an appeal. (DE 9-1, Bean Aff. ¶ 13.)

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will

4

prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust before bringing his lawsuit, and efforts to exhaust while the case is pending do not satisfy 42 U.S.C. § 1997e(a). *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("exhaustion must precede litigation"); *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (compliance with 42 U.S.C. § 1997e(a) is a "precondition to suit"). For exhaustion purposes, an inmate is deemed to have "brought" the action on the date when his complaint is tendered for mailing. *Ford*, 362 F.3d at 400.

The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The U.S. Court of Appeals for the Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole*, 438 F.3d at 809. Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each

5

step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

In determining whether an administrative remedy was effectively unavailable, the question is whether the inmate did "all that was reasonable to exhaust" under the circumstances. *Id.* at 812; *see also Schultz v. Pugh,* 728 F.3d 619, 621 (7th Cir. 2013) (plaintiff must demonstrate that a person of "ordinary firmness" would have been deterred from exhausting under the circumstances). If there are disputed issues of fact pertaining to whether the plaintiff exhausted or was prevented from doing so, the court is

required to hold a hearing to resolve those disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Here, the defendants argue that Jimmerson did not properly exhaust his administrative remedies before filing suit. (DE 9.) As outlined above, the official records of the IDOC reflect that Jimmerson filed grievances about his medical care, but did not file any appeals. (DE 9.) Unless he completed all levels of the grievance process, exhaustion did not occur. *Pozo*, 286 F.3d at 1024.

Jimmerson filed a very brief response to the motion. (DE 16.) He asserts in general terms that he attempted to exhaust the grievance process "several times," but his filings were either "lost or ignored" by prison staff. (*Id.*) He believes this was done intentionally in an attempt to thwart his ability to exhaust. (*Id.*) Under the applicable law, Jimmerson could be excused from failing to exhaust if the grievance process was effectively unavailable to him. *Kaba*, 458 F.3d at 684; *Dole*, 438 F.3d at 809. At present, however, Jimmerson has offered only vague assertions about his attempts to exhaust, and an inmate must offer specifics to create a genuine issue of material fact. *See Schultz*, 728 F.3d at 620 (since prisoner failed to set forth specifics about why he was unable to exhaust, summary judgment for the defendants was proper); *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004) (plaintiff who offered concrete details in a sworn statement submitted enough to

7

defeat summary judgment on exhaustion issue). It is unclear from Jimmerson's response whether he is claiming that he filed grievances or appeals (or both) which were not properly processed. He also does not provide dates or any other details pertaining to these filings. Further, his assertions are not submitted in the form of an affidavit or otherwise made under penalty of perjury.

The court is cognizant that Jimmerson is proceeding *pro se*, and he may not have known the format or level of detail required for his submission. What he has filed indicates that he may be able to establish an issue of fact requiring a *Pavey* hearing, but more detail is needed about precisely what efforts he made to exhaust, including the dates when he tried to invoke the grievance process or file appeals, where he turned in the completed forms, and how prison staff responded, if at all. If Jimmerson did not make reasonable and timely attempts to invoke each level of the grievance process before filing suit, then he did not properly exhaust. *See Pozo*, 286 F.3d at 1025 (inmate must comply with time deadlines to properly exhaust); *Dole*, 438 F.3d at 809 (inmate must show he did "all that was reasonable to exhaust" under the circumstances to be excused from exhaustion requirement).

When a party has failed to adequately support an assertion of fact in connection with a motion for summary judgment, the court has discretion to afford the party an opportunity to properly support that fact. *See* FED. R. CIV. P. 56(e)(1); *see also Archdiocese*

*of Milwaukee v. Doe*, 743 F.3d 1101, 1109 (7th Cir. 2014) (observing that "trial courts have considerable discretion in managing the course of litigation. . . . and this is no less true in the context of summary-judgment motions"). In light of Jimmerson's *pro se* status, the court will grant him an opportunity to submit a sworn declaration or affidavit providing additional detail about his efforts to exhaust. The declaration or affidavit must address the following issues:

(1)  The date(s) when he first attempted to invoke the formal grievance process;

(2)  The specific actions he took to file a grievance on the above date or dates;

(3)  The specific issues he raised in each grievance;

(4)  To whom at the prison he gave his completed grievance form(s);

(5)  The response(s) of prison staff, if any;

(6)  The date(s) when he filed or attempted to file an appeal of any grievance;

(7)  The specific issues he raised in each such appeal;

(8)  To whom at the prison he gave his completed appeal form(s); and

(9)  The response(s) of prison staff, if any.

He may provide other details pertaining to his efforts to exhaust that he believes are relevant to the court's consideration. He may also submit any documentation he has in his possession or can obtain pertaining to his efforts to exhaust. The defendants will be given an opportunity to respond to this filing. The motion

for summary judgment will be taken under advisement pending further ruling.[2]

CONCLUSION

For the reasons set forth above, the plaintiff is **GRANTED** to and including **September 5, 2014**, to submit a sworn declaration or affidavit as outlined herein. The defendants are granted to and including **September 19, 2014**, to file a response to the plaintiff's submission. The motion for summary judgment (DE 8) is **TAKEN UNDER ADVISEMENT** pending further ruling.

**DATED: July 28, 2014**         /s/RUDY LOZANO, Judge
                                 **United States District Court**

---

[2] The court notes that the defendants' motion is drafted with confusing "alternative" language; to the extent the defendants are requesting summary judgment on Jimmerson's claim for injunctive relief (see DE 9 at 7), this court has not ordered or permitted dispositive motions (or even any discovery) pertaining to the merits. Because the defendants have raised an exhaustion defense, it must be resolved before the merits can be addressed. *Perez,* 182 F.3d at 536 (when exhaustion defense is raised, district court "must not proceed to render a substantive decision until it has first considered § 1997e(a)"). Furthermore, the defendants' argument is unpersuasive. They argue that Jimmerson's claim for injunctive relief is moot because he is no longer housed at ISP. (DE 9 at 7.) The court was aware that he is no longer at ISP and addressed this fact in the screening order. (DE 4 at 6.) Jimmerson was not granted leave to proceed on a claim for injunctive relief against any of the ISP defendants. (*Id.*) However, he claimed that he is still in need of additional pain medication, and he was granted leave to proceed on a claim for injunctive relief against Dr. Mitcheff, who is allegedly responsible for approving inmate medication requests. (*Id.*) The defendants have offered no evidence to undercut Jimmerson's allegations with respect to Dr. Mitcheff.